IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY BOURGEOIS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-00626-KD-N |
| | ) | |
| WELLS FARGO BANK, N.A., et al., | ) | |
| | ) | |
|     Defendants. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on plaintiff's motion to remand (docs. 8-9), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 (b)(1)(B). Upon consideration of the motion, defendants' Response in opposition thereto (doc. 13), and all other pertinent portions of the record[1], it is recommended that the motion to remand be **DENIED**.

    I.    <u>Background</u>.

In her Verified Complaint and Petition for Injunctive Relief (doc. 1-1), plaintiff seeks to stop foreclosure proceedings which she contends are wrongful because defendants failed to provide prior notice of any acceleration of the debt and a statement of the amount required to cure any default. (Doc. 1-1 at 3-4). Plaintiff also seeks damages "for Defendants' breach and other wrongful acts." (*Id*.). According to the

---

[1] Plaintiff was given the opportunity to reply in this matter (doc. 12) but opted to rest on her initial arguments (docs. 8-9).

plaintiff, she entered into a mortgage loan on March 6, 2006, in the amount of $452,000.00 with Wells Fargo Bank, N.A. ("Wells Fargo"), which was secured by her home. (Doc. 1-1 at ¶ 4). On October 29, 2007, Wells Fargo assigned the subject mortgage to US Bank National Association, as Trustee for Citigroup Mortgage Loan Trust 2006-WFHE4 ("US Bank"). (*Id*. at ¶ 5). Plaintiff challenges the validity of this assignment on the grounds that it was "contrary to the applicable trust documents and applicable law." (*Id*.).

In May of 2009, plaintiff sought a modification of the mortgage at issue and was invited to apply for a modification under the Home Affordability Modification Program ("HAMP") and, following a resubmission of her application, was ultimately approved for a three month trial period plan which began September 1, 2009. (*Id*. at ¶¶ 7-9). Plaintiff made payments required by the trial plan from September 2009 through August 2010. (*Id*. at ¶ 10).

In August 2010, after plaintiff was advised that she was eligible for a permanent modification, she received a proposed modification agreement with Wells Fargo which increased the total balance due to over $529,000.00 and thus exceeded the original principal amount of the mortgage by more than $77,000.00. (*Id*. at ¶ 11). Plaintiff did not accept Wells Fargo's proposed modification and did not sign the agreement. (*Id*. at ¶ 12). A foreclosure notice was mailed to the plaintiff on October 4, 2010, which indicated that the foreclosure sale was to take place on November 8, 2010. (*Id*. at ¶ 13). Although US Bank's counsel advised plaintiff that "US Bank had accelerated the loan

effective October 4, 2010," plaintiff contends that such notice did not constitute the notice required under the mortgage which "would provide a meaningful opportunity to cure and reinstate [the mortgage]." (*Id*. at ¶ 16).

Plaintiff filed this action in the Circuit Court of Baldwin County, Alabama, on November 3, 2010. (Doc. 1 at 1-2). The foreclosure sale was voluntarily cancelled shortly after Wells Fargo's counsel received notification of the suit. (Doc. 9 at 3). On November 12, 2010, defendants removed the action to this Court, on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1).

In support of her motion to remand, plaintiff contends that, although "there is no dispute as to the diversity of citizenship among the parties[,] . . . Defendant has failed to establish that the amount in controversy meets the $75,000 threshold." (Doc. 9 at 3). Plaintiff argues that, in this case, "the simple fact that the subject mortgage or real estate is valued at more than $75,000 [does not] 'unambiguously' establish[] jurisdiction under the requirements set out in *Lowery*." (*Id*. at 5, *citing, inter alia,* Lowery v. Alabama Power Company, 483 F.3d 1184 (11th Cir. 2007).

In its opposition to remand, defendant argues that "the amount in controversy may be easily deduced from the face of the Complaint and the documents referenced by the Plaintiff, and the Court will not have to 'engage in the kind of unguided speculation explicitly prohibited by *Lowery*'." (Doc. 13 at 7, *citing* Horace v. LaSalle Bank, N.A., 2009 WL 426467, *2 (M.D. Ala. Feb. 17, 2009). According to the defendant, this case is distinguishable from the cases relied upon by the plaintiff because "Plaintiffs seek

injunctive and equitable relief barring Defendants from exercising their legal right to foreclose on the Property – *forever*—effectively prohibiting Defendants from recovering the Property's fair market value as the security for the Note, based on the allegation that the Plaintiff was wrongfully denied a loan modification and the note was improperly accelerated." (*Id.*). Defendant further argues that the jurisdictional amount is satisfied by the fact that the Plaintiff, by her allegations, has not only placed "the full amount of the accelerated Note, over $452,000.00, at issue,. . . [but also] "the value of the property [itself]." (*Id.* at 3).[2]

II. Standard of Review.

"In a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a preponderance of the evidence." Wiltew v. Parker, 2009 WL 3615041, * 2 (S.D. Ala. Oct. 30, 2009), *citing* McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178 (1936); Lowery v. Alabama Power Co., 483 F.3d 1184, 1210 (11th Cir.2007), *cert. denied sub nom* Hanna Steel Corp. v. Lowery, --- U.S. -- --, 128 S.Ct. 2877 (2008). In a removal action, that burden is upon the defendant. *Id*, *citing* Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). *See also*, Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction [and] doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court.")

---

[2] Defendant also essentially contends that plaintiff, "by claiming a loan modification was wrongfully overstated by $77,000.00," has certainly placed that amount at issue.

(citation omitted); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted).  In addition, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand." Holloway v. Morrow, 2008 WL 401305, * 2 (S.D. Ala. Feb. 11, 2008), *citing* University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir.1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).   "The existence of federal jurisdiction is tested at the time of removal." Adventure Outdoors, 552 F.3d at 1294-95, *citing*, Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1332 (11th Cir.1998). This Court must, therefore, look to the well-pleaded complaint alone in order to determine whether diversity jurisdiction under 28 U.S.C. § 1331 exists. *Id*., *citing*, Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908).   "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." Pretka v. Kolter City Plaza, II, Inc.,  608 F.3d 744, 752 (11th Cir. 2010).   "When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement [and] [i]f the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."

Beasley v. Fred's Inc., 2008 WL 899249 (S.D. Ala. Mar. 31, 2008), *quoting* Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). In addition, it is clear that "the 'plaintiff-viewpoint rule' is the proper method for determining the amount in controversy when injunctive relief is sought." James v. U.S. Bank Nat'l Ass'n, 2009 WL 2170045 (M.D. Ala. July 17, 2009), *citing* Ericsson GE Mobile Commc'ns v. Motorola Commc'ns & Elecs., Inc., 120 F.3d 216, 218-19 (11th Cir. 1997) (courts are "requir[ed] ... to measure the object of the litigation solely from the plaintiff's perspective."). "[T]he value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." Morrison v. Allstate Indemnity Co., 228 F.3d 1255, 1268 (11th Cir. 2000).

III.   Analysis.

Plaintiff seeks an unspecified amount of "compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs" in connection with each of her claims for wrongful disclosure (Count I), wantonness (Count II), negligence (Count III), breach of mortgage agreement (Count IV), and breach of fiduciary duty (Count V). However, it is plaintiff's request for declaratory and injunctive relief (Count VI) which is critical to the Court's determination of whether

the jurisdictional threshold has been established in this case.  Plaintiff acknowledges that she has set forth in her Complaint the value of the mortgage at issue, namely $452,000.00, and the value of the modification proposed by Wells Fargo, namely $77,000.00, but argues that defendant's "conclusory statement . . . falls well short of its substantial burden of proving jurisdiction by a preponderance of the evidence."  (Doc. 9 at 5).  Plaintiff relies on several cases which the undersigned finds distinguishable.

In Horace v. LaSalle Bank Nat'l Ass'n, 2009 WL 426467, *1-2 (M.D. Ala. Feb. 17, 2009), the court stated that "the 'true gravamen' of Horace's complaint is the 'unspecified amount of damages' she seeks 'as a result of alleged negligence and fraud associated with the procurement of the mortgage'" and that "the entire value of the mortgage is not at issue."   The unspecified damages sought by Horace, as is true of the unspecified damages sought in the case at bar, could not be readily deduced simply by looking at the complaint, the value of the underlying mortgage or the notice of removal.  However, unlike the case at bar, the only equitable relief sought by Horace was a "temporary-restraining order to enjoin foreclosure until that court could hear evidence in the case."  *Id*. at *1-2.

In James v. U.S. Bank Nat'l Ass'n, 2009 WL 2170045, *1  (M.D. Ala. July 17, 2009), plaintiffs similarly sought unspecified damages arising out of an improper loan and only "a temporary restraining order, preventing foreclosure until their case might be heard."  The court held that, because "the plaintiffs do not challenge the validity of the mortgage *in its entirety* . . .[f]rom the plaintiff's perspective, then, the monetary value of

7

the injunctive relief is not the entire value of the property; rather, it is the value of a delay in foreclosure." *Id*. at 2 (emphasis in original).

In Sanders v. Homecomings Financial, LLC, 2009 WL 1151868, *1-3 (M.D. Ala. Apr. 29, 2009), plaintiffs sought unspecified damages for misconduct in the sale of their mortgage loan and included a request for a temporary restraining order to prevent the impending sale of their home. The court held that plaintiff's interest was "as the very most, his equity in the home" which could not be determined without pure speculation given the facts of that case. *Id*. at 3.

In Wood v. Option One Mortgage Corp., 580 F.Supp.2d 1248, 1252 (N.D. Ala. 2008), the court addressed tort claims for unspecified compensatory and punitive damages and rejected defendant's contention that its evidence of comparable jury verdicts sufficiently established that the value of plaintiffs' case met the jurisdictional threshold. Moreover, there is no contention in Wood that the plaintiffs sought any form of injunctive or declaratory relief.

Plaintiff's reliance on Carstarphen v. Deutsche Bank Nat'l Trust Co., 2009 WL 1537861 (S.D. Ala. June 1, 2009), is similarly unavailing inasmuch as in that case the plaintiff also seeks only a *temporary restraining order* preventing foreclosure. The distinction was specifically addressed as follows:

> The key point on valuation raised in plaintiff's Motion to Reconsider (which was omitted in briefing the Motion to Remand) is that the injunctive relief sought in the Complaint is temporary, not permanent, in nature. . .

8

> . . . Because the benefit to a homeowner of a permanent injunction blocking a foreclosure sale is far greater than that of an ephemeral TRO prohibiting the same conduct for mere days or weeks, the jurisdictional impacts of this distinction are profound.

Carstarphen, 2009 WL 1537861 at *4-5.  As the Court further held, "the proper inquiry for valuation of the injunctive relief sought is the value to Carstarphen of being insulated from foreclosure by Deutsche Bank during a fleeting, transitory span." *Id*. at * 5.  The Court thus held that there was no basis for "equating the value of a brief postponement of foreclosure proceedings with the full $86,000 value of the home." *Id*.

In contrast to the cases relied upon by the plaintiff, the court in Mapp v. Deutsche Bank Nat'l Trust Co., 2009 WL 3664118 (M.D. Ala. Oct. 29, 2009), addressed the value of a plaintiff's request for a *permanent injunction* preventing foreclosure under Alabama law and held:

> [I]f the injunction were permanently granted, the benefits obtained by Mapp would be the right to retain ownership of and title to his home, as well as the right to occupy the home. *See* [Cohen v. Office Depot, Inc.,] 204 F.3d [1069] at 1077 [(11th Cir. 2000)]. Ownership, title and possession, thus, are not only the objects of this lawsuit, *see* Hunt [v. Washington State Apple Adver. Comm'n], 432 U.S. [333] at 347 [(1977)], but similarly represent the value of the rights sought to be protected by an injunction enjoining the foreclosure, *see* Ericsson, 120 F.3d at 347. In monetary terms, these benefits, objects and rights are best measured by the value of the home itself.

Mapp, 2009 WL 3664118 at *4.  Moreover, the court in Mapp concluded that the case was removable whether viewed from the real property perspective or a contract perspective inasmuch as plaintiff was not only seeking a permanent injunction against foreclosure but was challenging the assignment of his mortgage to Deutsche Bank and

9

thus the bank's standing to foreclose and had thereby "pled the whole debt into issue." *Id*.

In the case at bar, plaintiff specifically seeks not only a declaration that "Defendants have no authority in law or equity to conduct ***any*** foreclosure sale, including the one scheduled for November 8, 2010," but a declaration that "Plaintiff is in compliance with the mortgage, ***as amended***." Complaint (Doc. 1-1) at ¶ 36 (emphasis added). According to the plaintiff, her mortgage was amended to reduce the payments to $1,631.76 per month and that she timely made those payments "[f]rom September 2009 through August 2010." *Id*. at ¶ ¶ 9-10. Plaintiff contends that she is entitled to a permanent modification but that Wells Fargo's proposal for such a permanent modification wrongfully inflated the amount financed by "$77,000.00 more than the original loan balance." *Id*. at p. 1 and ¶ 11. Plaintiff thus seeks not only a permanent injunction against foreclosure similar to Mapp, but it is clear that any declaration by this Court that plaintiff has complied with the mortgage by making the reduced payments described in the complaint and that, consequently, defendants have no authority to accelerate her debt and foreclose on her property, would necessarily entail a declaration concerning the validity of the entire accelerated debt, namely $452,000.00 as stated by the plaintiff, or at the very least, the $77,000 additional financing proposed by the defendants in connection with any permanent modification of plaintiff's mortgage. [3] As

---

[3] To the extent it could be said that, because plaintiff does not claim that there is no mortgage on her property or that her property should be wholly free from encumbrance, the entire value of the (Continued)

was true in Mapp, plaintiff "has pled the whole debt into issue," as well as the $77,000.00 additional financing sought by Wells Fargo in exchange for converting the trial modification of the mortgage to a permanent modification. From plaintiff's perspective, as to which the value of the injunctive and declaratory relief must be measured, the declarations sought by the plaintiff in this case would vest plaintiff with the right to retain ownership of and title to her home, as well as the right to peacefully possess and enjoy her home, while making reduced payments which would not exceed the original debt of $452,000.00, and thus would not entail additional financing of $77,000.00. Accordingly, the undersigned finds that the amount in controversy exceeds the $75,000.00 jurisdictional threshold of this Court. *Cf*. Hardy v. Jim Walter Homes, Inc., 2007 WL 1889896 (S.D. Ala. June 28, 2007) (jurisdictional threshold satisfied in part by the monetary value to the plaintiff of a declaration that a financing agreement was null and void included the amount plaintiff was relieved of paying under the challenged agreement), *citing* Ericsson GE Mobile Communications, Inc. v. Motorola Communications and Electronics, Inc., 120 F.3d 216, 220 (11th Cir. 1997) (recognizing that "the immediate financial consequences of the litigation to the plaintiff-in that case, the financial benefit of not having to pay the interest contracted to be charged-may also be considered in calculating the amount in controversy"). Plaintiff's motion to remand is, therefore, due to be denied.

---

mortgage is not in issue, it is nonetheless clear that plaintiff seeks damages for Well's Fargo's attempt to increase the mortgage amount by $77,000. *See e.g.,* Horace , 2009 WL 426467 at *2 .

11

CONCLUSION

For the reasons stated above, it is the recommendation of the undersigned that the plaintiff's motion to remand (doc. 8-9) be **DENIED**.

The attached sheet contains important information regarding objections to this Report and Recommendation.

**Done** this 16th day of February, 2011.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[4] after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this  16th  day of February, 2011.

       /s/ Katherine P. Nelson
       UNITED STATES MAGISTRATE JUDGE

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).